UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NORVELL T. McINTIRE, | ) | |
| | ) | Case No. 3:15CV2622 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | JUDGE JEFFREY HELMICK |
| | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| MICHELLE MILLER, | ) | |
| Warden, | ) | |
| | ) | |
| Respondent. | ) | REPORT AND |
| | ) | RECOMMENDATION |
| | ) | |

Petitioner Norvell T. McIntire ("McIntire" or "petitioner") has filed a writ of habeas corpus pursuant to 28 U.S.C. § 2254. McIntire is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State of Ohio v. McIntire*, Case No. CRI-2013-0082 (Huron County July 22, 2013). (R. 8, RX 11, PageID #: 97.) McIntire's petition, filed *pro se*, seeks a writ of habeas corpus arising out of his 2013 convictions for rape, gross sexual imposition, and other crimes, in the Huron County (Ohio) Court of Common Pleas. The petition is before the magistrate judge pursuant to Local Rule 72.2(b)(2). For the following reasons, the magistrate judge recommends that the petition be denied.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals provided the following background:

Norvelle[1] McIntire was convicted of sexual offenses committed against 12–year–old S.C., and 14–year–old A.E, in August of 2012. According to the state, McIntire asked to touch, and ultimately did touch, the buttocks of both girls ("the first incident"), exposed himself to S.C. and tried to force her hand to his penis ("the second incident"), and pinned A.E. down and digitally penetrated her ("the third incident"). Both girls were neighbors of J.D., McIntire's girlfriend, and the offenses were committed at J.D.'s home. McIntire was 44 years old at the time of the incidents.

According to the evidence presented by the state at trial, the first incident occurred while S.C. and A.E. were alone with McIntire in the upstairs of J.D.'s home. McIntire asked S.C. and A.E. if he could touch their buttocks. They refused, but McIntire smacked their bottoms. The girls left.

The second incident occurred when A.E., S.C., S.C.'s younger sister, J.D.'s two children, McIntire's son, another teenaged girl ("K.R."), and K.R.'s two young nephews were at J.D.'s home with McIntire. They were watching television, playing video games, and wrestling in the living room. At some point, S.C. joined McIntire, who was sitting on the couch. She lay down with her head on his lap and shared a blanket with him because she was cold. McIntire was wearing shorts with an elastic waist. He exposed himself to S.C. and tried to pull her hand to his penis, but S.C. successfully resisted. Afterward, S.C. asked A.E. and K.R. to meet her in the bathroom, where she told them what had happened, however, neither witnessed the incident.

The third incident occurred when A.E. went over to J.D.'s house to ask if J.D. needed her to babysit her daughters. Only McIntire was home. He invited her to come inside to wait for J.D. to return. A.E. entered the home, but soon decided to leave. She claims that McIntire grabbed her arm, pulled her back, and forced her onto the couch. He held A.E.'s arms down with his left hand, fondled her over her clothing, then reached into her pants and penetrated her vagina with his finger. After five to ten minutes, he let her go and she ran out of the house.

---

[1] Petitioner's first name is often misspelled in the state court record. According to the petition, the spelling is "Norvell." The indictment and the judgment entry of conviction spell it correctly; the sentencing entry spells it as "Norvelle." (R. 8, RX 1, PageID #: 72; RX 9, PageID #: 93; RX 11, PageID #: 97.)

2

Neither S.C. nor A.E. initially reported these incidents. S.C. testified that a couple of days or a couple of weeks later (her testimony was unclear), she told an acquaintance, "H", about her experiences with McIntire. "H" reported the information to the police. When police officers interviewed S.C., she told them about the second incident but did not initially mention the first incident.

Law enforcement officials went to school to interview A.E. about S.C.'s allegations. They asked her about the second incident involving S.C., but then asked if McIntire had ever been inappropriate with A.E. A.E. denied that he had. Sensing that A.E. was uncomfortable talking to them, officers asked if she would prefer to talk to her school guidance counselor. Although she said yes, she told the counselor nothing. A.E. remembered that her former babysitter's son, Paul Gardner, was a police officer, so she asked if she could talk to him instead. She revealed nothing to Officer Gardner. At trial she testified that she did not tell him because she was afraid of McIntire.

Months later, A.E. told her cousin about the third incident. This information was ultimately relayed to A.E.'s parents who took her to the hospital to be examined on November 7, 2012. Although the passage of time made it impossible to gather any physical evidence, the hospital staff contacted the police. A.E. and her parents went to the station and A.E. reported what had happened.

McIntire was charged with rape, a violation of R.C. 2907.02(A)(2), gross sexual imposition, a violation of R.C. 2907.05(A)(1), importuning, a violation of R.C. 2907.07(A), attempted gross sexual imposition, a violation of R.C. 2923.02(A) and 2907.05(A)(4), and public indecency, a violation of R.C. 2907.09(A)(1)(C)(2).

The case proceeded to a jury trial. S.C., A.E., K.R., Officer Gardner, Sergeant James Fulton, and Sergeant Dave Pigman testified, as did Bellevue Hospital emergency department physician, Dr. Jack Hay, and nurse, Kimberly Cooper. The jury convicted McIntire of all charges.

(R. 8, RX 15, PageID #: 162-164; *State v. McIntire*, No. H-13-018, 2015 WL 1278645, at *1-*2

*(Ohio Ct. App. Mar. 20, 2015)*.)

McIntire filed a timely direct appeal of his conviction, raising three assignments of error:

1.  The trial court abused its discretion when it allowed Detective Fulton to provide inadmissible testimony regarding generalities about sex abuse victims.

2.  The trial court erred when it allowed the State of Ohio to comment on appellant's right to invoke counsel in violation of the Fifth and Sixth Amendments to the Federal Constitution made applicable to the States by the Fourteenth.

3.  The trial court erred when it failed to grant the appellant's motion for acquittal as it relates to Count Three in the indictment.

(R. 8, RX 13, PageID #: 118.) The court of appeals affirmed the judgment of the trial court. (R. 8, RX 15, PageID #: 161-181; *State v. McIntire*, No. H-13-018, 2015 WL 1278645 (Ohio Ct. App. Mar. 20, 2015).)

McIntire filed a timely appeal to the Supreme Court of Ohio. McIntire set forth the following proposition of law:

1.  The trial court errored [sic] when it allowed the State of Ohio to comment on Appellant's right to invoke counsel in violation of the Fifth and Sixth Amendments to the Federal Constitution made applicable to the states by the Fourteenth.

(R. 8, RX 17, PageID #: 191.) On July 8, 2015, the court declined to accept jurisdiction of the appeal. (R. 8, RX 18; *State v. McIntire*, 143 Ohio St.3d 1406, 34 N.E.3d 134 (2015).)

On June 9, 2014, while his direct appeal was pending, McIntire filed a petition for post-conviction relief pursuant to Ohio Rev. Code § 2953.21. (R. 8, RX 19, PageID #: 217-220.) His petition was based on two claims. First, he alleged due process and equal protection violations, regarding "false testimony by state witness [and] adding charges to indictment." (R. 8, RX 19, PageID #: 218.) The second claim is difficult to discern, as it was not clearly presented. McIntire first noted that litigants have a right to have legal proceedings correctly journalized. He then stated,

4

> Defense counsel's prejudicial comment breached client attorney privilege citing
> culpable conduct such insinuations invite trier of facts to speculate about such
> phantom proof. Berger v. U.S. & prosecutorial vindictiveness the act or instance
> intentionally seeking a more severe penalty in retaliation for a def. lawful exercise
> of Constitutional rights.

(R. 8, RX 19, PageID #: 219.) The trial court denied his petition and his accompanying motions

for counsel and expert assistance, on July 18, 2014. (R. 8, RX 22, PageID #: 228.) There is no

indication that McIntire appealed that ruling.

On June 15, 2015, McIntire filed an application to reopen his appeal pursuant to Ohio

App. Rule 26(B). (R. 8, RX 23, PageID #: 229-237.) McIntire argued that appellate counsel was

ineffective for failing to raise the following assignments of error:

> 1. The trial court violated the appellant's rights when it allowed the conviction to
> stand against the sufficiency of the evidence and the manifest weight of the
> evidence violations of the Fifth, Sixth and Fourteenth Amendments of the United
> States Constitution.
>
> 2. Trial court erred as a matter of law when it allowed testimony of impermissible
> other acts evidence in violation of the Due Process Clause of the 14th
> Amendment to the U.S. Constitution and Article I, Section I, 10 and 16 of The
> Ohio Constitution.
>
> 3. Cumulative errors trial court errors deprived defendant-Appellant of his
> constitutional right to a fair trial. [C]umulative error doctrine provides that, "A
> conviction will be reversed when the cumulative effect of those errors in a trial
> deprives a defendant of a fair trial even though each of the numerous instances
> does not individually constitute cause for reversal."
>
> 4. The trial court errored [sic] in allowing implied or expressly comments
> disparaging the defendant-appellant in the presence of jurors.

(R. 8, RX 23, PageID #: 233-234, case citations omitted.)

The court of appeals denied his application to reopen. (R. 8, RX 24, PageID #: 238-247.)

The court reviewed the issues presented, and found that McIntire had not been deprived of the

effective assistance of appellate counsel. (R. 8, RX 24, PageID #: 247.) There is no indication that McIntire appealed that ruling.

McIntire filed a timely petition for a writ of habeas corpus in this court. The petition raises ten claims for relief.[2] Although the respondent indicates that a fair reading of McIntire's habeas filing suggests that he is only presenting four "grounds" for relief, the court notes that McIntire has grouped his grounds for relief by the context in which he allegedly first raised each issue, so for example, Ground One is "Direct Appeal." (R.1, PageID #: 4.) But within "Ground One," McIntire sets forth three separate grounds for relief, labelled I., II., and III. *Id.* There are ten such grounds (numbered sequentially) set forth in four groupings in Section 12 of the petition. The court will consider the following ten grounds for relief:

> 1. The trial court abused its discretion when it allowed detective Fulton to provide inadmissible testimony about abused victims.
>
> 2. Trial court erred when it allowed the state of Ohio to comment on appellant's right to invoke counsel.
>
> 3. Trial court erred when it failed to grant the appellant's motion for acquittal.
>
> 4. Violation of Due Process; equal protection and prosecutorial vindictiveness – adding charges to indictment, False testimony by state witness K.R. [.....]
>
> 5. Defense counsel's prejudicial comment breached client attorney privilege citing culpable conduct.
>
> 6. Appellant challenges the trial court's supplement to the record Of Appeal R.9(A)(B)(E).

---

[2]  Rather than simply asserting his grounds for relief in the space provided on the form (e.g., "Ground One: xx"), McIntire has arranged his grounds for relief into groups. Also, several "grounds" are presented as a recitation of facts. The court presents petitioner's grounds in a more precise manner, at this point.

7. Trial court violated the appellant's rights when it allowed the conviction to stand against the sufficiency of the evidence and the manifest weight of evidence, violations of Fifth, Sixth, and the Fourteenth Amendments of the United States Constitution.

8. Trial court erred as a matter of law when it allowed testimony of impermissible other acts evidence in violation of due process clause of the Fourteenth Amendment to the U.S. Constitution.

9. Trial court erred by way of impropriety making an implied or expressly [*sic*] comment by the judge disparaging the defendant.

10. Cumulative errors:  Trial court erred in allowing multiple errors to stand resulting in an unfair trial.

(R. 1, § 12, PageID #: 4-9.)

The respondent has filed a Return of Writ (R. 8), and McIntire has filed an opposition (R. 9.) Without leave of court, the respondent then filed a Reply, which stated that the petitioner's traverse was "a challenge to interpret," and suggested that petitioner may wish to move for leave to file a supplemental traverse, presumably to clarify the issues briefed. (R. 10.) McIntire, however, declined the suggestion, stating the he had "drafted an exceptionally prominent opposition to the trverse [sic]," and requested that the court proceed based on the briefs already filed. (R. 11.)

## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus. Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim that was

adjudicated on the merits by a state court. The Supreme Court, in *Williams v. Taylor*, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-413 (2002). *See also Lorraine v. Coyle*, 291 F.3d 416, 421-422 (6th Cir. 2002), *cert. denied*, 538 U.S. 947 (2003). A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams*, 529 U.S. at 405. *See also Price v. Vincent*, 538 U.S. 634, 640 (2003). However, a state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect. Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law. *Williams*, 529 U.S. at 410-12; *Lorraine*, 291 F.3d at 422.

McIntire has filed his petition *pro se*. The pleadings of a petition drafted by a *pro se* litigant are held to less stringent standards than formal pleadings drafted by lawyers, and will be liberally construed. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001) (citing *Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972) (per curiam)). No other special treatment is afforded litigants who decide to proceed *pro se*. *McNeil v. United States*, 508 U.S.

8

106, 113 (1993) (strict adherence to procedural requirements); *Jourdan v. Jabe*, 951 F.2d 108 (6th Cir. 1991); *Brock v. Hendershott*, 840 F.2d 339, 343 (6th Cir. 1988).

### III. PROCEDURAL DEFAULT

The respondent argues that McIntire has procedurally defaulted all but one of his grounds for relief. The only ground that has survived for federal habeas review, according to respondent, is petitioner's second ground claiming: "Trial court erred when it allowed the state of Ohio to comment on appellant's right to invoke counsel." The respondent contends that only this claim survives procedural default, because it is the sole claim that McIntire appealed to the state court of appeals and the Supreme Court of Ohio. (R. 8, PageID #: 41.) As set forth below, the court concludes that petitioner's first, third, fourth, fifth, sixth, seventh, eighth, ninth, and tenth grounds for relief have been procedurally defaulted.

A petitioner's habeas claim may be procedurally defaulted in two distinct ways. First, by failing to comply with state procedural rules. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). Second, by failing to raise a claim in state court, and not pursuing the claim through the state's ordinary review process. *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)). In this case, respondent contends that McIntire's grounds—save one—were not properly exhausted in state court. (R. 8, PageID #: 48-60.)

A habeas petitioner cannot obtain relief unless he has completely exhausted his available state remedies. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Buell v. Mitchell*, 274 F.3d

337, 349 (6th Cir. 2001) (citing *Coleman v. Mitchell*, 244 F.3d 533, 538 (6th Cir.), *cert. denied*, 534 U.S. 977 (2001)). To satisfy the exhaustion requirement, a habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. The exhaustion requirement is satisfied when the highest court in the state has been given a full and fair opportunity to rule on the petitioner's claims. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994) (citing *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990)). Where the petitioner failed to present a claim in state court, a habeas court may deem that claim procedurally defaulted because the Ohio state courts would no longer entertain the claim. *Adams v. Bradshaw*, 484 F.Supp.2d 753, 769 (N.D. Ohio 2007) (citing *Buell*, 274 F.3d at 349).

## A.  Claims Raised on Direct Appeal

The first three grounds in the petition are claims that McIntire raised on direct appeal. (R. 1, PageID #: 4); R. 8, RX 13, PageID #: 118.) Although McIntire raised all three claims at the Ohio Court of Appeals through his direct appeal, he failed to maintain his first and third claims before the Supreme Court of Ohio. Before that court, McIntire only raised his claim that the trial court improperly allowed the state to comment on his right to invoke counsel (the second ground in his habeas petition). (R. 8, RX 17, PageID #: 191.)

McIntire has failed to properly exhaust his first and third grounds by giving the state high court a full and fair opportunity to rule on his constitutional claims. *Rust*, 17 F.3d at 160, (citing *Manning*, 912 F.2d at 881). McIntire cannot return to state court to exhaust the claims because

the Ohio Supreme Court has ruled that arguments that could have been raised in an initial appeal (and were not) will be barred from consideration on appeal following remand, under the doctrine of res judicata. *State v. Hutton*, 100 Ohio St.3d 176, 182, 797 N.E.2d 948, 956 (2003); *State v. Gillard*, 78 Ohio St.3d 548, 549, 679 N.E.2d 276 (1997), *cert. denied*, 523 U.S. 1108 (1998).

"If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806 (citing *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). Where state court remedies are no longer available to the petitioner, procedural default and not exhaustion bars habeas review. *Id.* Where the petitioner fails to demonstrate cause and prejudice to excuse the default, the claim is barred. *Id.* at 807. Although McIntire filed a 43-page opposition (R. 9), he has made no showing of cause and prejudice to excuse the failure to exhaust his claims.

The first and third grounds of McIntire's petition are procedurally defaulted. The petition should be denied as to these grounds because McIntire did not give the state high court a full and fair opportunity to rule on his claims. *Rust*, 17 F.3d at 160. The court will consider the merits of the second ground later in this report.

## B.  Claims Raised in Post-Conviction Petition

The fourth and fifth grounds in the petition are claims that McIntire raised before the trial court in his petition for post-conviction relief. (R. 8, RX 19, PageID #: 218-219.) After the trial court denied his post-conviction petition, however, McIntire failed to pursue these claims to the Ohio Court of Appeals; nor did he raise these claims before the Supreme Court of Ohio.

11

Any claims that McIntire could have asserted on direct appeal, but did not, are defaulted under the Ohio doctrine of res judicata. *Coleman*, 244 F.3d at 538; *State v. Szefcyk*, 77 Ohio St.3d 93, 671 N.E.2d 233 (1996) (syllabus); *State v. Perry*, 10 Ohio St.2d 175, 176, 226 N.E.2d 104, 105-106 (1967) (syllabus, ¶9). Both the fourth claim (alleging due process and equal protection violations) and the fifth claim (alleging defense counsel error) accrued during the criminal trial proceedings, and could have been raised on direct appeal.

McIntire cannot return to state court to exhaust these claims because the Ohio Supreme Court has ruled that arguments that could have been raised in an initial appeal (and were not) will be barred from consideration on appeal following remand. *Hutton*, 100 Ohio St.3d at 182, 797 N.E.2d at 956; *Gillard*, 78 Ohio St.3d at 549, 679 N.E.2d 276. State law would no longer permit McIntire to raise these particular claims, hence they are defaulted. *See Williams*, 460 F.3d at 806; *Adams*, 484 F.Supp.2d at 769.

In addition, where a state court has not addressed a prisoner's federal claim(s) because the prisoner failed to meet a state procedural requirement, the state judgment rests on independent and adequate state procedural grounds, barring federal habeas relief. *Coleman*, 501 U.S. at 729-730; *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Morales v. Coyle*, 98 F.Supp.2d 849, 860 (N.D. Ohio 2000), *aff'd*, 507 F.3d 916 (6th Cir. 2007). Thus, where a state prisoner has procedurally defaulted his federal claims in state court, habeas review of those claims is barred "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Buell*, 274 F.3d at 348 (quoting *Coleman*, 501 U.S. at 750);

12

*Davie v. Mitchell*, 324 F.Supp.2d 862, 870 (N.D. Ohio 2004), *aff'd*, 547 F.3d 297 (6th Cir. 2008), *cert. denied*, 558 U.S. 996 (2009).

In this context, the court considers four issues to determine whether a claim has been procedurally defaulted: (1) the court must determine whether there is a state procedural rule that is applicable to the petitioner's claim, and whether the petitioner failed to comply with the rule; (2) the court must decide whether the state courts actually enforced the procedural sanction; (3) the court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of the federal claim; and, (4) the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Buell*, 274 F.3d at 348 (citing *Maupin*, 785 F.2d at 138); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001) (quoting *Maupin*).

The Ohio rule of res judicata satisfies the first three factors in *Maupin*. *Jacobs*, 265 F.3d at 417. The fourth factor is that the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. "Cause" for a procedural default is ordinarily shown by "some objective factor external to the defense" that impeded the petitioner's efforts to comply with the state's procedural rule. *Coleman*, 501 U.S. at 753 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

McIntire, therefore, must demonstrate that there was cause for his failure to appeal the pertinent claims in order to overcome his procedural default. McIntire did not address the procedural default argument in his Traverse (R. 9), thus he has not shown cause.

13

The fundamental miscarriage of justice exception applies only to a "narrow range of cases." *Schlup v. Delo*, 513 U.S. 298, 314-315 (1995) (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). The Supreme Court has instructed that the exception should remain "rare," applied only in the "extraordinary case." *Id.* at 321. The fundamental miscarriage of justice exception is explicitly linked to a showing of the petitioner's actual innocence. *Id.* McIntire makes no such showing.

The fourth and fifth grounds of McIntire's petition are procedurally defaulted. The petition should be denied as to these grounds because McIntire did not give the state high court a full and fair opportunity to rule on his claims.

## C.  Ground Six

The sixth ground of the petition reads: "Appellant challenges the trial court's supplement to the record of appeal R.9(A)(B)(E)." (R. 1, PageID #: 7.) The section in the petition for providing supporting indicates, "Correction in transcripts." *Id.* McIntire concedes, in the petition, that he did not raise this issue in his direct appeal, nor did he raise it in a post-conviction petition. (R. 1, PageID #: 8.)

Although the exact claim that McIntire is raising is unclear, it appears to stem from how the trial transcript portrays the trial proceedings, jury instructions and certain interactions with the trial jury. (R. 1, PageID #: 7-8.) As stated above, any claims that McIntire could have asserted on direct appeal, but did not, are defaulted under the Ohio doctrine of res judicata. *Coleman*, 244 F.3d at 538; *Szefcyk*, 77 Ohio St.3d 93, 671 N.E.2d 233; *Perry*, 10 Ohio St.2d at

14

176, 226 N.E.2d at 105-106. The sixth ground arose during the criminal trial proceedings, and could have been raised on direct appeal. This ground is procedurally defaulted, for the reasons outlined above; and, the petition should be denied as to the sixth ground because McIntire did not give the state high court a full and fair opportunity to rule on his claim.

## D.  Rule 26(B) Application

McIntire's seventh, eighth, ninth and tenth grounds in the petition are also defaulted. He raised these claims with the state court of appeals in a Rule 26(B) application to reopen, in which he claimed ineffective assistance of appellate counsel. (R. 8, RX 23, PageID #: 229-232.) McIntire's supporting affidavit claimed his counsel was ineffective for failing to raise on direct appeal the claims he now presents in the seventh, eighth, ninth and tenth grounds. (Compare *Id*. at PageID #: 233-234; R.1 PageID # 8-9.)

The Sixth Circuit has ruled, however, that "bringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review." *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008), *cert. denied*, 558 U.S. 996 (2009) (citing *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005)). *See also Muntaser v. Bradshaw*, No. 10–3112, 2011 WL 2646551, at *6 (6th Cir. July 6, 2011), *cert. denied*, 132 S.Ct. 1020 (2012) (Rule 26(B) motion limited to claims arguing ineffective assistance of appellate counsel; cannot preserve underlying substantive claim). Furthermore, each of these claims concerns alleged errors that occurred in the trial court proceedings. McIntire cannot return to state court to exhaust these claims because the Ohio

15

Supreme Court has ruled that arguments that could have been raised in an initial appeal (and were not) will be barred from consideration on appeal following remand, under the doctrine of res judicata. *Hutton*, 100 Ohio St.3d at 182, 797 N.E.2d at 956; *Gillard*, 78 Ohio St.3d at 549, 679 N.E.2d 276. State law no longer would permit McIntire to raise the claims, and they are defaulted. *See Williams*, 460 F.3d at 806; *Adams*, 484 F.Supp.2d at 769.

Absent a showing of cause and prejudice to excuse the procedural defaults, the court will not review the merits of the defaulted claims. *Lott v. Coyle*, 261 F.3d 594, 612 (6th Cir. 2001). McIntire does not address cause and prejudice in his traverse. (R. 9.)

### E. Summary

The first, third, fourth, fifth, sixth, seventh, eighth, ninth, and tenth grounds for relief in the petition have been procedurally defaulted.

## IV. COMMENTS ON RIGHT TO COUNSEL

McIntire's second ground for relief in the petition is the sole remaining claim for consideration on the merits. The claim was raised in the state court of appeals as follows: "The trial court erred when it allowed the State of Ohio to comment on appellant's right to invoke counsel in violation of the Fifth and Sixth Amendments to the Federal Constitution made applicable to the States by the Fourteenth." (R. 8, RX 13, PageID #: 118, 124-125.) The grounds for his claim stem from testimony offered from Sergeant Fulton in response to the state prosecutor's direct examination.

16

The state court of appeals determined that McIntire's claim lacked merit. The appellate court relied on both state and federal law in reaching its decision. The question before this habeas court is whether the state court's decision involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. *Williams*, 529 U.S. at 412-413. A state court decision is not unreasonable simply because the district court considers the state decision to be erroneous or incorrect. Rather, to grant habeas relief, the court must determine that the state court decision is an objectively unreasonable application of federal law. *Williams*, 529 U.S. at 410-412; *Lorraine*, 291 F.3d at 422.

The appellate court addressed McIntire's claim as follows:

In his second assignment of error, McIntire claims that the trial court erred in allowing the state to make reference to his invocation of his right to counsel. The dialogue at issue is as follows:

> Q: As far as statements made by the defendant, did he make any statements to you?
>
> A: We talked for a few minutes. He said he wasn't going to comment on that without his attorney, without an attorney.
>
> Q: Okay. That's a right he has, correct?
>
> A: That's a right he has, absolutely.

Defense counsel requested a sidebar shortly after this testimony because the state announced that it intended to play an audio recording of Sergeant Fulton's interview with McIntire. The full extent of the audio recording was not discussed during the sidebar, but defense counsel objected to the use of the tape and referenced that McIntire made a remark in the interview about "God law vs. Man's law." Counsel argued, "I mean, now we're going to try to convict him on attitude or his religious beliefs when he reacts when he's served with an indictment." The state argued that whatever McIntire had said was "proof of the consciousness of the defendant's guilt or not."

17

The trial court—which had reviewed the transcript of the audio—found that the tape had no significant probative value. It remarked that McIntire requested an attorney early on in the conversation and that the conditions of a pending bond and details about another case were also discussed during the interview. The state could articulate no probative statements made in the interview except to say, "It is what it is. Let it be what it is then he laughs [sic]." The court found that the prejudicial effect of the tape outweighed its probative value and sustained McIntire's objection to its admission.

The state's examination of Sergeant Fulton continued: "Q: When you told the defendant that he was being charged with rape what, if anything, did he do?"

Defense counsel objected, accusing the state of trying to elicit through testimony that which the trial court had already excluded. The court overruled the objection and Sergeant Fulton answered:

> A: He laughed at the allegation. Right after that he asked for his attorney so.
>
> Q: When he asked for his attorney, did you do any further interrogation of him?
>
> A: No further interrogation.

Although McIntire objected to this testimony at trial, the basis of that objection differs from the one now forwarded on appeal. We, therefore, conduct a plain-error analysis under Crim.R. 52(B). *State v. Leach*, 150 Ohio App.3d 567, 2002–Ohio–6654, 782 N.E.2d 631, ¶ 41 (1st Dist.), aff'd, 102 Ohio St.3d 135, 2004–Ohio–2147, 807 N.E.2d 335. Under Crim.R. 52(B), McIntire must establish a plain error affecting a substantial right. Plain error exists only if the outcome of the trial would have been different but for the error. *Id*. We may consider the entire record in considering the effect of any such error. *Id*.

Where an accused has been arrested and read his Miranda rights, the Due Process Clause is violated when the state promises that the accused's silence will not be used against him, but later offers that silence as substantive evidence in its case-in-chief. *State v. Leach*, 102 Ohio St.3d 135, 2004–Ohio–2147, 807 N.E.2d 335, ¶ 17, citing *Wainwright v. Greenfield*, 474 U.S. 284, 291, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986). As we recognized in *State v. Sabbah*, 13 Ohio App.3d 124, 133, 468 N.E.2d 718 (6th Dist.1982):

18

> References to prior silence in the presence of the jury inevitably precipitate the impermissible inference that a failure to deny an accusation of guilt, or assert its contrary, is an admission of the accusation's truth. * * * Needless to say, the inference is an extremely tenuous one since there are frequently competing, equally plausible explanations for a defendant's silence at the time of his arrest.

The Ohio Supreme Court has admonished prosecutors not to comment on post-arrest silence. *State v. Leach*, 150 Ohio App.3d 567, 2002–Ohio–6654, 782 N.E.2d 631, ¶ 29. Where, however, the invocation of the right to silence is improperly referenced by the state, we must look to "whether the comment was extensive, whether an inference of guilt from silence is stressed to the jury as a basis of conviction, and whether there is evidence that could have supported acquittal." (Citations omitted.) *State v. Saunders*, 98 Ohio App.3d 355, 360, 648 N.E.2d 587 (6th Dist.1994). If the reference is brief, isolated, and followed by a curative instruction by the trial court, the error might not be reversible. *State v. Chaney*, 7th Dist. Mahoning No. 08 MA 171, 2010–Ohio–1312, ¶ 35, citing *State v. Treesh*, 90 Ohio St.3d 460, 479–480, 739 N.E.2d 749 (2001).

Here, the state argues that McIntire did not remain silent after being arrested and read his Miranda rights; he laughed. In any event, it urges, the statement was brief and isolated, the jury was informed through Sergeant Fulton's testimony that McIntire possessed the right to remain silent, and the trial court provided a jury instruction to the effect that McIntire's silence could not be considered in its deliberation of McIntire's guilt or innocence.

While we do not agree that McIntire's laughter provided the state with an acceptable reason for commenting on McIntire's invocation of his right to silence, we do agree that there is no reversible error here. The state never again referenced McIntire's silence and it was not mentioned during closing argument. And while the trial court did not immediately provide a curative instruction, McIntire did not request one. In addition to this, both Sergeant Fulton in his testimony, and the court in its instructions, informed the jury that McIntire "absolutely" had a right to remain silent and request counsel. As far as whether there was evidence supporting acquittal, the case primarily turned on whether the jury believed S.C. and A.E. It apparently did.

We find McIntire's second assignment of error not well-taken.

(R. 8, RX 15, PageID #: 171-175; *McIntire*, 2015 WL 1278645, at *5-*7.)

19

In *Doyle v. Ohio*, the United States Supreme Court held that "the use for impeachment purposes of [defendant's] silence, at the time of arrest and after receiving *Miranda* warnings, violate[s] the Due Process Clause of the Fourteenth Amendment." *Doyle v. Ohio*, 426 U.S. 610, 619 (1976). The Court in *Doyle* determined that implicit in the *Miranda* warning that a person has a right to remain silent was the assurance that such silence would carry no penalty. *Hayton v. Egeler*, 555 F.2d 599, 602 (6th Cir. 1977), *cert. denied,* 434 U.S. 973 (1977) (discussing *Doyle*). The Supreme Court has reasoned that it is "fundamentally unfair" to allow a prosecutor to use a defendant's silence to impeach an explanation he offers at trial. *Wainwright v. Greenfield*, 474 U.S. 284, 291 (1986); *Franklin v. Bradshaw*, 545 F.3d 409, 415 (6th Cir. 2008) (quoting *Doyle*, 426 U.S. at 618).

In *Wainwright v. Greenfield*, unlike *Doyle*, the defendant's silence was used as affirmative proof in the case in chief, not as impeachment. *Wainwright*, 474 U.S. at 292. The Court found the distinction immaterial, and rejected as unconstitutional the prosecution's reference to the defendant's use of the right to remain silent in order to obtain his conviction. *Id.* The Court found impermissible "the evidentiary use of an individual's exercise of his constitutional rights after the State's assurance [through Miranda warnings] that the invocation of those rights will not be penalized." *Id.* at 295. Moreover, the Sixth Circuit has found that where the trial court allows the prosecutor to elicit that the defendant had invoked his right to counsel, after being given Miranda warnings, the prosecutor's questions amounted to blatant *Doyle* violations. *Jones*, 696 F.3d at 485 (citing *Jaradat v. Williams*, 591 F.3d 863, 867-868 (6th Cir. 2010)).

Here, the state court of appeals implicitly found that *Doyle* violations did occur[3] at McIntire's trial, and this court concurs that *Doyle* violations occurred. The state court of appeals pointed out that the prosecutor twice elicited testimony which referred to the defendant's invocation of his right to counsel, and his subsequent silence. (R. 8, RX 15, PageID #: 171-173; *McIntire*, 2015 WL 1278645, at *5-*6.) The trial court allowed the testimony, over objection, which improperly referred to McIntire's invocation of his right to silence and to an attorney. *See generally Jones v. Bagley*, 696 F.3d 475, 484-485 (6th Cir. 2012), *cert. denied,* 134 S.Ct. 62 (2013) (improper to elicit testimony that interrogation ended when defendant asked to speak with attorney).

As the state appellate court noted, however, the state "never again referenced McIntire's silence and it was not mentioned during closing argument." (R. 8, RX 15, PageID #: 175; *McIntire*, 2015 WL 1278645, at *7.); *see generally Wainwright*, 474 U.S. at 295; *Doyle*, 426 U.S. at 618- 619. There is no indication that the trial court gave an immediate curative instruction to the jury following the officer's testimony, nor did McIntire request one. (R. 8, RX 15, PageID #: 175; *McIntire*, 2015 WL 1278645, at *7.) But as the state court of appeals pointed out, the trial court did instruct the jury that McIntire had the absolute right to remain silent and request counsel. *Id.*; *see Jones*, 696 F.3d at 484-485 (although trial court allowed testimony that interrogation ended when suspect asked to speak with attorney, trial court advised jury of defendant's right to invoke right to counsel, and later reiterated instruction to jury); *Johnson v.*

---

[3]  The state court stated: ". . . we do not agree that McIntire's laughter provided the state with an acceptable reason for commenting on McIntire's invocation of his right to silence . . ." (R. 8, RX 15, PageID #: 175; *McIntire*, 2015 WL 1278645, at *7.)

*Konteh*, No. 3:07CV2290, 2008 WL 5636387, at *7 (N.D. Ohio Oct. 8, 2008), *adopted by*

*Johnson v. Konteh*, 597 F.Supp.2d 747 (N.D. Ohio 2009). A similar situation occurred in an

analogous case before this court:

> Based on the record there were actually only two questions asked in reference
> to post-arrest silence that elicited an answer. After this exchange the
> prosecution did not bring up post-arrest silence again. There was no mention of
> these questions or Petitioner's silence in closing argument. In *Meeks v.
> Havener*, 545 F.2d 9, 10 (6th Cir.1976), the court held that a single question
> with "no attempt then or in closing argument to suggest that the jury draw an
> implication of guilt from silence, is not sufficient to require the granting of a
> writ of habeas corpus in face of overwhelming evidence of guilt." The court
> similarly held in *Hayton v. Egeler*, 555 F.2d 599, 603 (6th Cir.1977), that the
> asking of one question was harmless error if not referred to further. In this
> case, there were essentially two questions that were not referred to further.

*Id.* (concluding that the two questions amounted to harmless error because there was sufficient

evidence of defendant's guilt.) Here as well, the two questions were isolated and received brief

responses, after which the state did not bring up defendant's post-arrest silence again. There was

no mention of the post-arrest silence during the opening statement or closing argument, and for

the reasons set forth below the error was harmless.

The respondent argues that, even if there was error, it was harmless error under the

relevant standard to apply in federal habeas review. (R. 8, PageID #: 66.) The state court applied

"plain error" review, rather than harmless error, under the following standard: "Plain error exists

only if the outcome of the trial would have been different but for the error." (R. 8, RX 15,

PageID #: 173; *McIntire*, 2015 WL 1278645, at *6.) The state court, in its plain error analysis,

found that "the case primarily turned on whether the jury believed [the testimony of the alleged

victims] S.C. and A.E. It apparently did." (R. 8, RX 15, PageID #: 175; *McIntire*, 2015 WL

1278645, at *7.) The state court overruled McIntire's assignment of error. (R. 8, RX 15, PageID #: 174-175; *McIntire*, 2015 WL 1278645, at *7.)

Once a federal habeas court determines that the trial court committed a *Doyle* error, the court must apply a harmless error analysis. *Jaradat*, 591 F.3d at 868. The standard applied in determining if a constitutional error is harmless is whether the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 627 (1993); *Jones*, 696 F.3d at 485 (quoting *Brecht*); *Jaradat*, 591 F.3d at 868-869; *Franklin*, 545 F.3d at 415 (quoting *Fry v. Pliler*, 551 U.S. 112, 116 (2007)).

Under *Brecht*, the respondent has the burden to show that the error was harmless. *Jaradat*, 591 F.3d at 869 (citing *Ruelas v. Wolfenbarger*, 580 F.3d 403, 413 (6th Cir. 2009), *cert. denied*, 560 U.S. 924 (2010)). The weight of the evidence presented at trial, and the number of references made by the prosecutor regarding the defendant's post-Miranda silence are relevant to the analysis of whether the *Doyle* error had a substantial influence on the verdict. *Westberg v. Palmer*, No. 10-1285, 2012 WL 2989233, at *5 (6th Cir. July 23, 2012), *cert. denied*, 133 S.Ct. 1287 (2013); *Gravley v. Mills*, 87 F.3d 779, 789 (6th Cir. 1996). In *Jones*, the court found that the *Doyle* violation "was harmless error given that the trial judge gave curative instructions and the evidence against [the defendant] was otherwise strong." *Jones*, 696 F.3d at 485.

The respondent argues that given the testimony from the witnesses and victims presented at trial, and the jury's evaluation of that testimony, there could be no substantial and injurious effect from the objectionable testimony. (R. 8, PageID #: 66-67.) As noted earlier, both minor victims testified, and were subject to cross-examination. The jury found their testimony credible.

While the prosecutor elicited the testimony at issue from one witness, the state did not subsequently mentioned McIntire's silence, and did not mention it during closing argument. The court advised the jury in its instructions that McIntire was within his rights to request counsel and remain silent. Considering the various circumstances of the case, the court does not find that the *Doyle* error had a substantial, injurious effect or influence in determining the jury's verdict. The state court decision reached the same result. (R. 8, RX 15, PageID #: 174-175; *McIntire, 2015 WL 1278645, at *7*.)

This court does not find that the state court's decision was an unreasonable application of clearly established federal law, as determined by the Supreme Court in *Doyle*, *Wainwright* and *Brecht*. The petition should not be granted based on the second ground.

V. CONCLUSION

The petition for a writ of habeas corpus should be denied for the reasons set forth herein. The petitioner's first, third, fourth, fifth, sixth, seventh, eighth, ninth, and tenth claims in the petition are procedurally defaulted. Moreover, the state court's decision regarding Petitioner's second claim was not an unreasonable application of clearly established federal law, as determined by the Supreme Court in *Doyle*, *Wainwright* and *Brecht*. The petition should not be granted on that basis.

Dated:   December 15, 2017              /s/ David A. Ruiz
                                        David A. Ruiz
                                        United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).